Good morning. May it please the Court, Robin Traylor on behalf of Taisei Construction Corporation. I'd like to save three minutes for rebuttal. This is an appeal arising from two orders of the District Court, one granting a motion for partial summary judgment against Taisei and one granting the order to dismiss against Taisei's counterclaim. Can I ask you just one question? Of course. That's not going to be in the record off the bat. Has the underlying litigation now been resolved? It has been resolved, Your Honor, by settlement. And in whose favor was it resolved? It was settled, Your Honor. So it was a payment of a substantial amount of money, but it is now over. That is a matter of public record, actually. Okay. But so I'm just trying to remember, your client was the defendant in the underlying suit. My client was – Taisei was the general contractor on a very large construction case. There were multiple defendants, multiple subcontractor defendants as well as Taisei. But bottom line, your client has been – through the settlement, you have to pay some money to the plaintiffs? My client paid money through its insurance carriers. That's also a matter of public record. Okay. But that's what I was just trying to figure out. Are you trying to get them to now cover the cost of the settlement? Or is it just now a fight over who's going to have footed the bill – foot the bill for the defense costs? The fight in this case is whether or not travelers met its duty to defend Taisei. As you know, there were three causes of action. There was a declaratory relief, which contracted an equitable reimbursement claim. So travelers is not only saying we have no duty to defend Taisei in the underlying action, but we're entitled to our money back. But if you were indemnified, what's the harm? What's the prejudice? What are you looking for? They already paid the bill. So Taisei would – in this case, would like to avoid their equitable reimbursement claim. Other carriers would have an equitable contribution claim, which is also an important issue, against travelers for their failure to step up and pay a pro rata share or to have met their independent obligation to defend. But if you remember, this was a case that was brought in dependency of that case. So Taisei was concerned that it was not being defended adequately by travelers appointed to counsel. And then therefore asked travelers appointed to counsel to withdraw. Travelers then promptly, within a week, filed its declaratory relief action in the federal district court. Okay. And then travelers didn't pay another dime toward the defense costs in the underlying action, I guess. That's correct. And the record shows that travelers was doing two things, paying for appointed defense counsel and paying a pro rata share of the costs. And in a huge construction case, the record doesn't reflect this, but there were over $30 million in defense fees and costs. Half of those were costs, i.e., mostly expert costs. And so travelers was able to avoid a pro rata contribution that it already agreed to. This is in the record because it's part of the 12th 2013 agreement. Well, tell me exactly, what is your equitable reimbursement claim for? It's not Taisei's equitable reimbursement claim. It is travelers' equitable reimbursement claim. All right. Travelers is claiming that it is owed its money back that it expended on defense costs in defending Taisei. It claims that Taisei breached its duty of cooperation and therefore should get its money back. That's the $120-something thousand dollars? That's the money that we stipulated to, yes, Your Honor, for purposes of trying to get this appeal forward. Right. And that's money that they paid for this law firm that you all fired? That is correct, Your Honor. And why would they be entitled to any of that money back? I didn't understand why you agreed to give them $120,000 if you lose this appeal. What does that money represent? That money to travelers, and you'll have to direct that question better to travelers. Well, you all agreed to it. Well, we agreed to it only to move forward with this appeal because we think that they cannot establish that Taisei breached his duty of cooperation, that they can't establish it. So there is the expenses for the defense after the Lee firm withdrew. That's one item? No, Your Honor. No. After the Lee firm withdrew, Travelers therefore no longer defended it. It filed its declaratory relief action. Right. It had no more defense fees and costs. And you then hire your own lawyer? Taisei was being defended by two different counsel. It had a collection of counsel that its lead insurer, its primary insurer, had retained, and about 11 to 13, depending upon the time, different insurers defended through that counsel. Travelers decided and initially defended in that group, then stepped out and said, we'll defend by ourselves over here, and hired the Lee firm to provide an independent defense. And part of the issue is, were they providing that independent defense? Because as the record reflects, they had a $92,000 attorney fee budget, they weren't providing status reports, they weren't attending a key case management conference, they weren't showing up at depositions, things like that. And so the argument here from Taisei's perspective was, if you're going to provide a separate defense outside this group of carriers, you actually have to defend. And factually, Taisei said, you aren't defending, and therefore we're asking you to withdraw. Not that we're rejecting your defense, but we want a defense. Maybe you can just, I think I sort of jumped way ahead, but backing up. Because I guess I don't see how your client was justified in discharging this firm, at least on the, if I remember, but tell me if I'm getting the facts wrong. You never complained throughout a 20-month representation about anything. The first thing the Lee firm gets is this letter saying, you haven't given us the reports that you all promised in this email a year and a half ago, or whatever it was. And we're not happy about that, so please sign the enclosed withdrawal form. And that's the first they ever hear that you all are unhappy with their representation. I guess that to me does not suggest that you had a sound basis for discharging the counsel that the insurance company had provided. So I kind of just get off on the wrong foot with your position right there. So help me understand what I'm missing. I think the key, Your Honor, is you may be right, you may be wrong, it's a fact question. And this was decided on a Rule 56 motion. Well, hang on. That's where I guess I'm sorry to jump in. But it's not a fact question in the sense that the historical facts that I just described, there's no dispute that that's how it went down. And I guess I'm saying even if I'm in the insured's position and I'm not happy with counsel, they're not doing whatever, you know, I think they should be doing, I don't think I just get to unilaterally discharge them at the first moment that I decide that I'm not happy. Don't I have to engage in some kind of dialogue with the firm, with the insurance company, say, hey, you have an obligation to provide me with adequate defense. I don't think that's being done for the following reasons. And you have, I don't know, two months to fix this or this needs to happen. But not just, well, we just woke up today and we decided to fire this law firm and then that's the end of it. I understand why the insurance company said, well, no, you don't just get to pick which law firm you want. That is not part of our agreement. And you can't just fire out of the blue the firm we've provided. And to try to unpack that, I don't think Tysay was trying to pick its law firm. There's no evidence of that in the record. They did allow the Lee firm to defend for 20 months, which I think provides very important context. Three, I don't think there's any duty of sort of a complaint at that point in time. And four, again, I go back to the context is the facts, and especially I point you to the Barada Declaration, which is at ER 151 through 66, showing all the things that the Lee firm did not do, apparently, and I think it was reasonable to conclude as a reasonable inference that at traveler's behest, they didn't do those things. And so the question is, were they justified in doing that? And I don't think there's any case law that supports the notion that there has to be kind of a serial sort of set of protests going forward. But am I right, though, that the letter discharging the firm only complained about the failure to get status reports on a certain – that's what I'm remembering, that it wasn't anything about the substance of the representation. It was simply like, you didn't give us a summary of the deposition or you didn't – you know, it was some very kind of trivial thing that could have been fixed if that was really your complaint about the nature of the representation. Well, let me pick up on the notion of the could have been fixed. The other issue then would be, did travelers then exercise reasonable diligence to try to procure the cooperation if it's insured? Another fact question. Instead of coming back to Taisei and said, wait a second, this is the first we've heard about this. You didn't get this. What can we do about this? Let's try to work this out. We aren't going to allow you to fire our counsel. We're going to tell our counsel not to withdraw. We can't stop you from discharging the law firm if you're the client. If you send a withdrawal form to a lawyer and say, sign this, if I'm the lawyer, I don't have any – I don't get to insist on continuing to represent you after you've discharged me. Well, I think the law firm could do two things. One, it could just pull out or it could say, wait a second, there are problems here. Can we try to figure this out? We don't think it's obvious. But don't you have a duty to cooperate? And is that duty satisfied by simply sending a letter and saying, you're out of here? I think, again, that is a fact question, Your Honor, about whether or not – But what is a fact that is in dispute? You send a letter and they withdrew. Well, I think – And the letter expressed the sentiment that you had that they hadn't sent a report. The fact question would be whether or not that a jury could decide, a reasonable jury could decide, whether or not that was a justified action to take. And moreover, that's just one element of a reach of duty. I mean, again, we look at, were they performing in the first place? Was the withdrawal request justified? And moreover, keep going down the line. Were there reasonable efforts to procure the cooperation they ensured afterwards, which is also a requirement under – Is there any evidence in the record that the Lee firm was not competent counsel? No, Your Honor. We are not contesting that they were not competent counsel. Okay. So, see, if they inquired on the facts and they were competent counsel, your problem was with the Lee firm, not with the insurance company. Well, Your Honor, I think there's two issues there to look at. One is, does the duty to defend just sort of get delegated down and completely after that there is no duty upon the insurer? I'd suggest that there is no law to support that. Two, there was this 12-2013 agreement, which sort of elevated or at least specified some of the duties that the Lee firm would do. But that's between the Lee firm and the other counsel. Did that involve travelers? It did involve travelers, Your Honor, because that 12-2013 agreement, what we set down, was cc'd to the travelers adjuster. That doesn't form a contract binding on travelers. I just think that's a silly argument. I understand why you make it. I just – you can't possibly say that they – nobody even assented on their side. They just – who knows if anyone even bothered to read these emails they were cc'd on. Well, I'll beg to differ, Your Honor, that it's a silly argument because if the contract is formed before the engagement, right, if there's an exchange of a negotiation, the law is very clear that a lawyer in that situation can be acting as the agent for its principle here, travelers. Only if he's authorized. Okay. And then after that, even if you would conclude, if a fact – if a trier of fact, rather on summary judgment, would conclude that there was no authorization, then there's acquiescence, ratification, and, you know, duties to repudiate. And the law is very clear that silence can form ratification. Travelers clearly knew in the record of this agreement about the contours of the duty that TSA was expecting and the conditions under which they were willing to accept. They clearly ratified that as the record would establish. So I don't think it's a silly argument, Your Honor. I do. Yeah. But whatever. Let me ask you this. The strongest argument, it seemed to me, in your favor was the principle in California insurance law that an insurer, at least in the posture of the case back when we were in the district court, before the underlying litigation has been resolved, that the insurer really can't litigate even this declaratory judgment action until the underlying litigation is resolved, because only then could we know if there had been substantial prejudice to the insurer's rights. That seemed to me to be the strongest argument in your client's favor as to why maybe the district court, you know, jumped the gun in resolving this against you. But I guess I don't understand how that works when the main fight is over the duty to defend in an ongoing action as opposed to the duty to identify, you know, after some bad result has occurred. Because from Traveler's standpoint, I think when they go to the district court, they need to know right then, are we excused from our duty to defend? We can't wait for the underlying litigation to resolve itself to figure out whether substantial prejudice has been shown, because we need an answer right now, right? Your Honor, in California law, it happens all the time that insurers are required to defend even though they may not believe they have a duty to defend. So what they do is they reserve their rights. So they continue to defend in that situation and then come back at the end of the day and say, we reserved our rights, we didn't actually have that duty to defend. I don't think that this is any different in reality in this situation. Let me ask a little different question on this substantial prejudice. I mean, your position was that, well, until the underlying, the Wilshire-Vermont litigation is terminated, it's impossible to show prejudice, right? My position is that there was actually no prejudice shown whatsoever in the record. But my question is this. Now that there's been a settlement, what does that do to your prejudice argument? Does it help it? Does it hurt it? Is it neutral? What does it mean? I would suggest that there was no prejudice in this case even after the case is concluded. What harm did travelers suffer in terms of being relieved, asking his appointed counsel to withdraw? Were they exposed to any further indemnity obligations? Maybe they had to pay more in the settlement. I don't know. Did they pay anything? That's not in the record, Your Honor. And I actually don't know the answer as to what they paid. They certainly did not pay anything on behalf of Taisei. I can say that for the record. So there is no prejudice. Well, just a minute now. I think you're saying the fact that the underlying litigation has been settled doesn't really tell us anything on the prejudice question. I think it just confirms, Your Honor, that there was no prejudice. You couldn't determine prejudice at the time. And at the end of the day, in fact— Honor can say there was no prejudice because I think the analysis is you can't show whether or not there's prejudice until the termination of the underlying litigation. So, you know, it's too early to make a guess. I don't think you can say the record shows no prejudice. There's just no record on it. I would agree with that and just add to it, and I see my time is done. But it is also substantial prejudice, Your Honor. And I think if you look at the case authority about this in terms of what that substantial prejudice is— Should travelers be given the opportunity to show whether or not this settlement resulted in substantial prejudice to them? That has never happened. So shouldn't the matter maybe be remanded for that issue? I think the answer in this case is what I would suggest needs to happen is it does need to be remanded. I frankly think they had the opportunity on summary judgment to present evidence of substantial prejudice. But the case hadn't been settled. I mean, you know, you could have won the case or maybe you paid, as the judge suggested, more than you should have. But that's all speculation at this point. I agree, Your Honor, and I think that that factual record is not there. It wasn't there at the time of summary judgment. This case should be remanded to the district court for further proceedings to develop a factual record which would allow a determination whether or not there was any breach of cooperation in this case. Okay. I see I'm out of time. We'll give you a minute for rebuttal. Thank you, Your Honor. But let's hear from Travelers Counsel. Good morning, Your Honor. Raymond Brown from the Aguilera Law Group on behalf of Plaintiff and Appellee Travelers Property Casualty Company of America. May it please the Court. One thing that I wanted to make clear at the outset because there was discussion about the judgment for $120,364.59 and Travelers Equitable Reimbursement Claim. The Travelers in its complaint had claims for declaratory relief, breach of contract, and equitable reimbursement. The equitable reimbursement claim was not tied directly to the breach of contract. The equitable reimbursement claim was pursuant to the California Supreme Court's ruling in Bust v. Superior Court. It was that some or all of the monies we paid were for uncovered claims and we are therefore entitled to reimbursement. Pursuant to the stipulation of the parties, the court awarded judgment of $120,000. It wasn't differentiated whether that was breach of contract or equitable reimbursement, but it's judgment for $120,000. And TSA did not appeal the equitable reimbursement decision. So as far as I'm concerned, the $120,000 stands, regardless of what this court does. It's how I would interpret it. I think they actually argued, albeit in passing in their brief, that your client doesn't even have that claim. That claim is not a thing under California law to begin with. And so I guess if they were successful in this appeal and we agreed with them on that, then that $120,000 would be wiped out. The Bust v. Superior Court specifically says we do have that claim. I personally have tried a Bust case. I hate to get sidetracked on this point, but you're saying the $120,000 represents what? Defense costs your client extended to cover the defense of uncovered claims? Is that the notion? Correct. Let me give you an example. I'm going to do it by way of example because it's not in the record, but in one case the traveler's pays the defense fees that the firm charges, including their costs. Those costs, but traveler's obligation, its contractual obligation, is limited to claims arising out of the work of its named insured. Tyce was not traveler's named insured. So in a hypothetical case, let's say the traveler's named insured is a landscaper. The landscaper works on 20 homes in a residential development, but there are 120 homes at issue in the litigation. The defense firm for the developer sends traveler's a bill for the inspection of all 120 homes. Traveler's under Bust has a prophylactic obligation to defend the entire case and then to come back after to seek fees that were not covered by its policy. So traveler's pays for the inspection of all 120 homes, but then later traveler's sues under Bust for reimbursement and says, a hundred of those homes aren't insured, didn't even work for, work on. So those are not claims potentially covered by our policy. Okay. So I take back what I said before. What I thought the $120,000 was for was money essentially that your client was owed because of the breach of the cooperation clause. And I gather you're saying that is not what the money represents? The judgment was not clear on what it represents. It's a judgment pursuant to both the breach of contract and the equitable reimbursement. The equitable reimbursement claim is under Bust. Got it. Okay. I did want to briefly address counsel's statement that there is no law to support the claim that a carrier just delegates its obligation to provide a defense. Under Merit versus Reserve Insurance Company that we cited and other California authorities, a carrier satisfies its duty to defend by appointing competent counsel and funding the defense. That's the carrier's obligation. The insurer is not vicariously liable for the actions of counsel because the insurer is not a, they're not practicing law. So at that point, if the appointed counsel commits malpractice, the claim by the insured is against the attorney, not against the insurer, as long as it was competent counsel to begin with. When the insurer gets a letter from the insured, as in this case, that, you know, we want to get rid of the lead firm, what is the duty of the insurer at that point? Under California law, I don't know that the carrier has a specific duty. Just say no, you can't do that? That's it? I mean, I would think a good practice by the carrier would be to say, well, what is your problem with the lead firm? Let's try to facilitate what your problem is. If you want them to report more frequently, we can ask them to report more frequently. I don't think there's any case law saying that the insurer has that affirmative obligation. Anything like that happen in this case? No. Consultation? No. No. I don't recall the first notice travelers had. No, after the notice. Any consultations after the notice? No. Say, you know, just a minute. We better talk about this. No. But at the same time, Your Honor, as the district court pointed out, this was a sophisticated client who had independent counsel. The first notice we had was, we don't want this attorney. He resigns. We file our action. At no point, including during the pendency of the district court action, did Ty say ever say, well, wait a minute. Let's cooperate. We're not necessarily opposed to having Lee. We just need these issues addressed. All right. Now, let me, time's running out, so let me switch to something entirely different. All right. Now, under the California case law, right, on your breach of contract claim, you have to show substantial prejudice. And I guess the cases say you can't do that until after the underlying litigation is terminated. That's true now. So what does that mean to you? Can you show substantial prejudice? Well, first of all, I don't think that's what the cases say. Okay. What do the cases say then? Well, it depends on the nature of the failure to cooperate. If the failure to cooperate is the insured doesn't show up for a deposition, then you have to wait until the case is over, because maybe that doesn't make any difference. If the failure to cooperate is the insured fails to verify interrogatories, you've got to wait until the case is over, because maybe that doesn't affect the outcome of the case. But here, the failure to cooperate is more fundamental. It's, we're not going to allow you to provide a defense. So at that point, under the contract, Travelers has two monetary obligations to the insured, to provide a defense and to provide an indemnity. Well, we can't provide a defense because they're refusing to allow us to. Well, hang on. But their response is to say, well, no, yeah, we discharged the firm of your choice, but that didn't, that doesn't absolve you of the obligation to provide a defense. We're embroiled in this massive litigation that's ongoing. You've got to work with us to come up with either, you know, start paying the firm we've already got or find some new firm. And then, fine, you can assert under a reservation of rights that we're going to get back all of this money from you bastards because you had no right to fire the first firm. But you don't just get to walk away, which is what your client did, and just run to court and say, we're done, and not pay another penny. So why is he not right about that? Well, the, I mean, this court in CyberNet Ventures said the failure to cooperate, the refusal to allow the insured to provide a defense waives any right to either a defense or indemnity. The, under the policy and under California law, Travelers has the right, the absolute right to control the defense. It can't be that the insured can say, we don't want this attorney. You've got to pay for either this specific attorney or some other attorney. You don't get to choose that. This is a contract. We have the right to defend. If I'm in an auto accident and my insurer assigns an attorney, I cannot say either I don't like that guy, use a different guy, or use this specific guy. My rights under the policy are defined by the policy and California law, and my rights are a defense that they control. So Travelers had the right to assign counsel, which it did. Now, if they don't want that counsel, that's fine. As Your Honor pointed out, that's their right. They can fire that counsel. But then they're on their own. They've said, we don't want these policy benefits. The defense that you are obligated to provide, we don't want. And at that point, Travelers, I think the case law is pretty clear, that because Travelers has the right to control the defense, once you refuse to allow us to do that, whatever happens after that, if there's an ultimate judgment against you or a settlement pursuant to the defense that you chose, we're not on the hook for that. Well, let me put the question just a little different term. What remedy are you seeking under your breach of contract claim? Damages, right? Yes. For what? The damages are because they refused the defense we provided, they forfeited all right to benefits under the policy. Well, substantial prejudice would have to show that the outcome would have been different if your counsel had continued to represent the insured. How are you going to show that? But that's the thing. I mean, if it's a discrete refusal to cooperate, like a refusal to show up at a deposition or respond to interrogatories, then I agree with you, that is the analysis. You have to see, did that cause a different result? But here, where you just refused to allow us to provide a defense, then we cannot be held liable for the judgment or settlement that results when we weren't allowed the opportunity to provide the defense. But what's your best California case for the proposition that there's kind of this exception to the substantial prejudice requirement? Because all the cases that I've looked at say what Judge Rubrano said, which is that even if there's a breach of the duty, the cooperation clause, you still have to show substantial prejudice. And you're saying, well, but this is different. Yes, it's true in all these other cases where the person doesn't show up for the deposition, but our case is different. So what's the best California authority for that? Off the top of my head, I know Vellado and Truck are two cases that I think stand for that principle. And then, of course, the Ninth Circuit's decision in Cybernet Ventures. Okay. None of those is ringing a bell, so I'll have to take a look at those. Because it's a more fundamental character. The duty to indemnify is tied to the duty to defend. Once we provide a defense, we're on the hook, pursuant to the policy, for whatever results, the settlement or judgment. But if we're not given the opportunity to provide a defense, we cannot be held liable for the judgment or settlement of results. So you're saying that the insured prohibited you from doing that, or would you have had an opportunity to replace the lea firm or to reach some kind of agreement with the insured subject to a reservation? Doesn't that all play into it? You just simply got the letter and you were out of there. The lea firm is the counsel that we chose, who Tyce admitted was qualified counsel. So once they say, and, I mean, we have published appellate decisions that we cited the Mitchell and Mazzoni decisions that are also along those same lines, where in those cases it was Sentex who, again, it was the lea firm. They fired the lea firm and said, no, employ our counsel. They don't have the right to do that. And it's not on us to say, well, let's find somebody else that is acceptable. This is the counsel that we chose. They're qualified. You admitted they're qualified. You don't have the right to request somebody else just because you want to. Under the policy and under California law, that's not your right. I think the case law, I don't know that there's a decision that is more directly on point than CyberNet Ventures, but there actually another case is the Travelers v. Sentex case out of the Northern District, which, of course, isn't a published decision, but it is some authority, where the court said exactly what we're saying here, that the refusal to accept a defense is so fundamental that prejudice is assumed. It's inherent in that decision. Once they reject our defense, we are prejudiced substantially. Thank you, Your Honor. Thank you very much. We'll give you a couple of minutes for rebuttal if you've got some additional points. Thank you, Your Honor. I've got five points I'll go run through. One, substantial prejudice. The law in California is very clear that it requires egregious misconduct on part of the insured. I don't think the facts here rise anywhere to those levels. Not appearing for trial over a period of 17 months, not appearing for depositions. He's the worst kind. He just fired the lawyer. Your Honor, again, this is a factual issue, because we allowed this lawyer to be in the case and defend for 20 months. This is not an instance where we said we just aren't going to take your counsel. We refused to take your counsel from the very outset. This was we'll accept your counsel and then a long period of nonperformance. Where is that argument going, though? Are you saying the carrier's right to select counsel is conditional? No, Your Honor. No. What's the purpose of resigning this 20-month relationship you had with this law firm before you fired him? Because it shows that Tyce met its obligations to accept appointed counsel and was willing to allow travelers to control the defense, so long as it actually defended it. But what's your remedy at that point? Shouldn't you go to trial and say, you know, this is what the Lee firm is doing. Would you appoint us somebody else? Did you ask him to do that? Arguably, that's what the facts show. We asked counsel to withdraw, and travelers, as I think the questions have indicated, could have done other things in response. That was a factual dispute about what was the appropriate course of action at that point in time. One question would be, does an insured have to accept a defense, even by competent counsel, who's not doing its job? Imagine the public policy implications, the perverse incentives that would create.  Well, in a sense, you know, you don't have, well, you know, unless there's a vast amount of undercoverage, you don't have the same stake in the outcome of the litigation as travelers does, do you? The Tyce here certainly had enough stake in this outcome. If the coverage is sufficient to cover any verdict, what's your stake? Well, Your Honor, this coverage was not sufficient if you look at the policy itself. That's what I said, unless there's a vast amount of undercoverage. And you had two or three other carriers involved, too, right? There were multiple carriers. Maybe, you know, you were additionally insured to a lot of people or something like that. This was a multimillion-dollar case, Your Honor. So this traveler's policy in and of itself was not sufficient. So your, you know, your stake in it is a lot less than travelers, isn't it, in the outcome? Travelers actually had a limited stake. It was only liable up to the limits of its policy. Tyce was exposed to a demand for $168 million at one point. Well, but how much coverage did you have if you add up all the insurance policies? That's not on the record, Your Honor. I don't know the answer to that question off the top of my head. Well, then, if that's not on the record, you can't say how, you know, what kind of exposure Tyce faced. Well, it is up to the insurer to establish substantial prejudice. I don't think the insurer has to come in and say, well, we have alternative coverage. These duties are independent. That's very clear in California law. Tyce has an independent duty, separate and apart from all the other carriers, to defend and to indemnify. Travelers do. Travelers does. Yes, Your Honor. And then real quick, if I still have the latitude of the Court. Duties to a point does not satisfy. Dynamic concept says that if you provide a constricted defense, that violates your duties. I think the facts here show that they provided that constricted defense. Three, you asked about what does constitute. If you look at the State Farm Diligence, if you look at State Farm v. Miller, it talks about what reasonable diligence is. It sets the standard and says, shows in that situation they made strong efforts to locate the insured, bring that insured, and obtain the cooperation of that insured after there was initial non-appearances. Three, there is nothing in the record. I know the district court said this, but there is nothing in the record that says Tyce was refusing the defense. What it was saying to this defense counsel is you aren't really defending us. We want you to withdraw. But it wasn't refusing the defense, nor was Tyce insisting that travelers appoint its own favorite counsel. There's nothing in the record to support that. But you were insisting that they pay for another lawyer because you fired the one they provided you. Tyce definitely was insisting that there was a duty to defend and wanted to be defended fully and completely as required by California law by travelers. You didn't fire a law firm because you discharged the one that they had provided. You didn't try to work out the differences. That's what I guess that's the problem I see on your end. But your time, you're way over your time. Let me just ask the one question I really want to know the answer to. What's your response to your opponent's argument that substantial, the substantial pressure requirement, yeah, it applies in 99 percent of the cases, but not in a case where the breach of the cooperation clause is as fundamental as basically discharging the lawyer that the insurer chose? What's your response to that? Well, I'll take issue whether this was fundamental. Again, I point to the fact that there was 20 months of cooperation. But let's just assume that we disagree with your view that you all did not fire the lawyer and basically just refuse a defense. I understand you're contesting that. But let's say that that's the view of the facts that we took here. His position is that under California law, when the breach of the cooperation clause is that fundamental, we're not talking about not showing up for the deposition or you didn't help with the interrogatories, you refused to accept the lawyer that we provided to you to provide a defense, that we don't have to show substantial prejudice in that context. That has some intuitive appeal to me. And I just want to know what is your response to that? I think the response is that that position has no support in California law. The substantial prejudice requirement as an element of a breach of cooperation is well established. And there is no exception to that rule. Do you know if it has any support in any other state? I do not know, Your Honor. It's just been wholly litigated under California law. So I don't think there is any support for that notion. There are cases that say if you don't accept it in the very first instance, then that might be a problem, but not if you've accepted the defense and there's a problem thereafter. So I don't think this even follows into the one small exception that might exist out there. Okay. Thank you, counsel. Thank you. The case just argued is submitted.
judges: Tashima, Watford, Robreno